UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SHAYNE HENDRICKS,

        APPELLANT,

  -against-                                     Case No. 25-cv-8931-pae

BROADWAY REALTY I CO., LLC, et al,

        APPELLEES.
-----------------------------------------------------------X

## BRIEF FOR THE APPELLANT

Appeal from the Order and Decision of
The Hon. David S. Jones
United States Bankruptcy Judge

THE KANTROW LAW GROUP, PLLC
FRED S. KANTROW
732 SMITHTOWN BYPASS, SUITE 101
SMITHTOWN, NEW YORK 11787
FKANTROW@THEKANTROWLAWGROUP.COM
516 703 3672

# TABLE OF CONTENTS

| | |
|---|---:|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| JURISDICTIONAL STATEMENTS | 2 |
| STATEMENT OF THE ISSUES | 3 |
| STANDARD OF REVIEW | 3 |
| STATEMENT OF THE CASE | 4 |
| SUMMARY OF THE ARGUMENT | 4 |
| ARGUMENT | 5 |
|     I. THE BANKRUPTCY COURT FAILED TO ENGAGE IN AN APPROPRIATE ANALYSIS IN DETERMINING TO DENY RELIEF FROM THE AUTOMATIC STAY | 5 |
|     II. THE BANKRUPTCY COURT'S FOCUS ON THE SELF-INSURED RETENTION OBLIGATIONS WAS NOT DISPOSITIVE OF THE ISSUE TO LIFT THE STAY TO ALLOW HENDRICKS TO CONTINUE HER PERSONAL INJURY ACTION | 8 |
|     III. THE BANKRUPTCY COURT FAILED TO CONSIDER THAT THE SIR WOULD BE NOTHING MORE THAN A GENERAL UNSECURED CLAIM AGAINST THE BANKRUPTCY ESTATE | 10 |
|     IV. IN DENYING STAY RELIEF, THE BANKRUPTCY COURT GAVE THE DEBTOR GREATER RIGHTS THAN IT HAD UNDER THE INSURANCE POLICY | 11 |
| CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page**

*Admiral Insurance v. Grace Industries,*
    409 B.R. 275 (E.D.N.Y. 2009)..................................................... 8

*American Safety Indemnity v. Official Committee of Unsecured Creditors.*
    2006 WL 2850612 (E.D.N.Y. Oct. 3, 2006)............................. 9

*Blaise v. Wolinsky,*
    219 B.R. 946 (2d Cir. B.A.P. 1998)........................................ 7

*The Bureau of Oceans and International Environmental and Scientific Affairs,*
    319 B.R. 266 (Bankr. M.D. Fla. 2004)..................................... 12

*Diocese of Camden, New Jersey,*
    653 B.R. 309 (Bankr. D.N.J. 2023)......................................... 9

*Home Insurance of Illinois v. Hooper,*
    294 Ill. App.3d 626, 691 N.E.2d 65 (1998)............................... 9

*In re 9281 Shore Road Owners Corp.,*
    187 B.R. 837 (E.D.N.Y. 1995)............................................... 3

*In re Anton,*
    145 B.R. 767 (Bankr. E.D.N.Y.)............................................. 6

*In re Boodrow,*
    126 F.3d 43 (2d Cir. 1997)..................................................... 6

*In re Curtis,*
    40 B.R. 795 (Bankr. D. Utah 1984)......................................... 5

*In re Ionsphere Clubs Inc.,*
    133 B.R. 5 (S.D.N.Y. 1991)..................................................... 3

*In re Mazzeo,*
    167 F.3d 139 (2d Cir. 1999).................................................... 6

*In re Quigley Co.,*
    361 B.R. 723 (Bankr. S.D.N.Y. 2007)..................................... 6

*In re Sonnax Indus., Inc.*,
  907 F.2d 1280 (2d Cir. 1990)............................................................. 3, 5

*Itel Containers International Corp. v. Atlantafik Express Services, Ltd.*,
  909 F.2d 698 (2d Cir. 1990)............................................................ 7

*Keck, Mahin & Cate*,
  241 B.R. 583 (Bankr. N.D. Ill. 1999)............................................ 11

*Kelley v. Everglades Drainage District*,
  319 U.S. 415 (1943)...................................................................... 7

*Kleban v. National Union Fire Insurance of Pittsburgh, Pa.*,
  771 A.2d 39 (Pa. Super. Ct. 2001).............................................. 11

*Mayo v. Lakeland Highlands Canning Co.*,
  309 U.S. 310 (1940)...................................................................... 7

*Morning Mist Holdings Ltd. v. Krys*,
  714 F.3d 127 (2d Cir. 2013)......................................................... 3

*Pak-Mor Manufacturing v. Royal Surplus Lines Insurance*,
  2005 WL 3487723 (W.D. Tex. Nov. 3, 2005)............................ 10

*Sturgill v. Beach at Mason Limited Partnership*,
  2015 WL 6163787 (S.D. Ohio Oct. 20, 2015)........................... 10

*United States v. U.S. Gypsum Co.*,
  333 U.S. 364 (1948)...................................................................... 3

*U.S. Bank, Tr. Nat'l Ass'n v. AMR Corp.*,
  730 F.3d 88 (2d Cir. 2003)........................................................... 6

*Vanderveer Estates Holding.*,
  328 B.R. 18 (Bankr. E.D.N.Y. 2005)........................................... 9

*William Gasperini v. The Center for Humanities, Ind.*,
  149 F.3d 137 (2d Cir. 1998).......................................................... 3

**PRELIMINARY STATEMENT**

Broadway Realty I Co., LLC and its debtor affiliates (the "Debtors"), filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on May 21, 2025 (the "Petition Date"). It is axiomatic that upon the Petition Date, the automatic stay provisions set forth in section 362 of the Bankruptcy Code, became operative, thus staying any and all actions commenced against the Debtors prior to the Petition Date.

Prior to the Petition Date, on or about August 8, 2023, Shayne Hendricks ("Hendricks") the Appellant herein, commenced an action against one of the affiliated debtors, 330 Realty NY LLC ("330 Realty) as well as a non-debtor, Pinnacle Group NY LLC ("Pinnacle") in the Supreme Court of New York, Kings County, under Index No. 522892/2023 (the "State Court Action"). Hendricks sought to recover damages resulting from certain personal injuries sustained on June 13, 2023, on or near the property owned by 330 Realty located at 330 East 19th Street, Brooklyn, New York.

On or about August 29, 2025, Hendricks, by and through her State Court counsel, moved before the Bankruptcy Court, seeking the entry of an order modifying, vacating or otherwise providing relief from the automatic stay to allow her to return to the State Court and prosecute the State Court Action and assert claims *only* against the Debtors' insurance and not against the Debtors' estates. A hearing before the Bankruptcy Court was scheduled for September 30, 2025 (the "Bankruptcy Court Hearing").

On September 23, 2025, the Debtors, by and through their counsel, interposed their timely objection to the relief sought by Hendricks. The Debtors argued that the stay should not be lifted because if lifted, "the Debtors will be forced to incur all administrative and defense costs associated with the Movant's claims up to the self-insured retention amount (the "SIR"). Further, the Debtors

are required to indemnify the Non-Debtor defendant for all costs and expenses, including amounts expended under the self-insured retention, relating to the claims asserted in Movant's prepetition litigation. *Debtors' Initial Objection to Movant's Motion for Relief from the Automatic Stay*, pg.2, ¶ 2 [ECF No. 552].

The Debtors went on to argue that the "Movant is only one of the Debtors' thousands of *potential* prepetition general unsecured creditors." (Emphasis Added"). *Id.* at ¶3. In essence, the Debtors argued that granting stay relief in favor of Hendricks would result in myriad claims against the Debtors in connection with potential personal injury claimants which would be harmful to the Debtors and their bankruptcy estates. The Debtors offered no admissible evidence of this "fact" nor did they point to the record to demonstrate other parties who sought relief from the automatic stay. As set forth in detail in the Argument in her brief, the Debtors' arguments fail because the mere fact that the Debtors are obligated under their insurance policies to provide for the SIR, should not and does not preclude Hendricks from seeking recovery above any SIR amount, which is nothing more than a general unsecured claim against the bankruptcy estates, and the Bankruptcy Court should have granted her relief from the automatic stay conditioned on such. However, the Bankruptcy Court did not grant relief from the stay and this Court should overrule the Bankruptcy Court and allow Hendricks to prosecute her State Court Action solely to the extent of available insurance coverage.

## JURISDICTIONAL STATEMENTS

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §158(a)(1) which provides that the district courts of the United States shall have jurisdiction to hear appeals from final judgments, ordered, and decrees. As the Bankruptcy Court entered its final order on October

2

2, 2025, and as Hendricks filed a timely appeal of the final order, this Court has jurisdiction over this appeal.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1334.

## STATEMENT OF THE ISSUES

Did the Bankruptcy Court commit reversible error in denying Hendrick relief from the automatic stay?

## STANDARD OF REVIEW

This Court reviews the Bankruptcy Court's conclusions of law *de novo* and its factual findings for clear error. *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 132 (2d Cir. 2013). A factual finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Because the decision of whether to lift an automatic stay is committed to the discretion of the Bankruptcy Court, a district court may overturn a denial of a motion to lift a stay only upon a showing of abuse of discretion. *See In re Sonnax*, 907 F.2d 1280, 1286 (2d Cir. 1990); *In re Ionsphere Clubs Inc.*, 133 B.R. 5, 7 (S.D.N.Y. 1991). Although a reviewing judge may substitute its judgment for that of the Bankruptcy Court, a finding of an abuse of discretion is proper when the Bankruptcy Court fails to consider all relevant factors. *See William Gasperini v. The Center for Humanities, Ind.*, 149 F.3d 137, 142 (2d Cir. 1998). "A Bankruptcy Court's findings of fact are clearly erroneous if the appellate court has a definite and firm conclusion that a mistake has been committed, after reviewing the entire record." *In re 9281 Shore Road Owners Corp.*, 187 B.R. 837, 847 (E.D.N.Y. 1995).

## STATEMENT OF THE CASE

Prior to the Petition Date, Hendricks commenced the State Court Action seeking to recover for alleged personal injuries suffered at 330 East 19th Street, Brooklyn, New York. The Debtors filed for relief pursuant to chapter 11 of the Bankruptcy Code and the automatic stay precluded Hendricks from continuing her prosecution of the State Court Action. Hendricks moved for relief from the automatic stay in the Bankruptcy Court and the Debtors opposed the relief.

The Bankruptcy Court held a hearing on September 30, 2025, and denied Hendricks' relief. By Order dated October 2, 2025, the Bankruptcy Court memorialized the denial. Hendricks filed a timely appeal of the Bankruptcy Court's October 2, 2025, Order.

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court considered the arguments of counsel at the September 30, 2025, hearing. The Debtors argued that because of the obligation to pay the SIR, relief from the automatic stay would be highly prejudicial to the Debtors and their estates. The Bankruptcy Court considered the *Sonnax* factors however the Bankruptcy Court abused its discretion in relying upon the flawed argument asserted by the Debtors that Hendricks was not entitled to relief from the stay because of the costs of the SIR. As set forth in the Argument herein, the mere fact that the Debtors are obligated under their insurance policies to pay the SIR does not constitute grounds to deny relief from the stay. The Debtors insurers would be required to pay the amounts above the SIR, in the event that Hendricks was successful in the State Court Action and any amount to which the Debtors would otherwise be obligated under the SIR would simply constitute pre-petition general unsecured claims against the Debtors' estates. For these reasons the Bankruptcy Court abused its discretion, and this Court should overrule and grant relief from the stay.

**ARGUMENT**

I. THE BANKRUPTCY COURT FAILED TO ENGAGE IN AN APPROPRIATE ANALYSIS IN DETERMINING TO DENY RELIEF FROM THE AUTOMATIC STAY.

Courts in the Second Circuit apply the so-called *Sonnax* factors established in *Sonnax Indus. Inc., v. Tri Component Products Corp. (In re Sonnax Indus. Inc.,* 907 F.2d 1280, 1286 (2d Cir, 1990) in determining whether relief from the automatic stay provisions of the Bankruptcy Code is warranted. The analysis is one that is done on a case-by-case basis. Relief from the automatic stay may be granted, as in this case, to continue the prosecution of litigation against the debtor for "cause" and the Second Circuit has identified the factors the bankruptcy court should consider in determining whether such cause exists. *Id.* citing *In re Curtis,* 40 B.R. 795 (Bankr. D. Utah 1984). These factors include: "(1) whether relief would result in partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms." *Id.* (citing *In re Curtis,* 40 B.R. 795, 799-800). The *Sonnax* factors are non-exclusive and all are not relevant in every case, and a reviewing court need not assign equal weight to factors it considers relevant. *Id.;*

*In re Quigley Co.,* 361 B.R. 723 (Bankr. S.D.N.Y. 2007); *In re Anton,* 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992); *U.S. Bank. Tr. Nat'l Ass'n v. AMR Corp. (In re AMR Corp.),* 730 F.3d 88 (2d. Cir. 2003) (upholding the bankruptcy court's denial of stay relief and its finding that only two of the twelve *Sonnax* factors were relevant).

In this case, the Bankruptcy Court's Order denying relief from the automatic stay to allow Hendricks to continue the prosecution of her personal injury action, the subject of the pending appeal, is a two page Order, which abjectly failed to make any findings whatsoever. The Order simply states that the Court "having determined that the Motion should be denied, is denied without prejudice." As stated herein, the Bankruptcy Court's decision on a motion to lift the automatic stay is reviewable only for an abuse of discretion. *See, e.g., In re Boodrow,* 126 F.3d 43, 47 (2d Cir. 1997). "Reviewable for abuse-of-discretion, however, does not mean unreviewable." *In re Mazzeo,* 167 F.3d 139 (2d Cir. 1999).

In *Mazzeo,* the Second Circuit made it clear that pursuant to the rules governing proceedings in the Bankruptcy Court, Rule 51(a) of the Federal Rules of Civil Procedure applies to the resolution of a dispute over a request for relief from the automatic stay. *See Fed. R. Bankr. P. 4001(a), 9014, 7052, Rule 9014 Advisory Committee Notes.* Rule 52(a) provides, in pertinent part, that "[i]n all actions tried upon the facts without a jury or within an advisory jury, the court *shall* find the facts specifically and states separately its conclusions of law thereon…" (emphasis added). *Id.*

Rule 52(a) further provides in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. "A principal purpose of the requirement for specific factual findings is to inform the appellate court of the basis of the decision and to permit effective appellate review." *See, e.g.,*

6

*Kelley v. Everglades Drainage District,* 319 U.S. 415, 422 (1943); *Mayo v. Lakeland Highlands Canning Co.,* 309 U.S. 310, 316 (1940); *Itel Containers International Corp. v. Atlantrafik Express Services, Ltd.,* 909 F.2d 698, 704 (2d Cir. 1990); *Blaise v. Wolinsky,* 219 B.R. 946, 948 (2d Cir. B.A.P. 1998). The Bankruptcy Court's findings of fact and conclusions of law need not be written but they must be sufficiently set forth to allow a meaningful appellate review and in the event such sufficiency is absent, this Court may vacate and remand.

The Bankruptcy Court engaged in the following analysis of why relief from the stay was unwarranted in this case in applying the *Sonnax* factors (recognizing again that not all factors need to be addressed) – the "Debtors' [who] are not flush with cash would need to devote substantial cash and resources to their defense costs in proceeding with this matter, and that would interfere with their efforts to reorganize." *Tr.* P. 11, L 9-13. The Bankruptcy Court went on, "And then also, another recognized factor is whether the Debtor's [sic] Insurer has assumed full responsibility. As I think you both recognize, when that's the case, I'm quite willing, and courts are quite willing to allow tort claimants to proceed as long as they limit their potential recovery in all costs to the applicable insurance. But you just don't fit in the box here. It can be a plus factor to lift the stay if the action primarily involves third parties. That's not the case here." *Tr.* P. 11, L14-22.

The Bankruptcy Court went on. "And so in interest of judicial economy, and the expeditious and economical resolution of litigation, as the Debtors say, they face quite a number of – I don't know what the number is, but they refer to multiple similar claims, and they need to fit all that into an ordered resolution process that will serve judicial economy, and also will be more efficient as a use of Debtor [sic] and Estate Resources." *Tr.* P. 11-12, L23-25, 1-5. "And then finally, the impact of the stay on the parties, and the balance of harm. I appreciate the hardship on an individual person, and tort Claimant being made to wait longer for the outcome of her case.

But there really is a potential significant impact on the Debtors, and the successful progress of their bankruptcy case, if we were to allow this case and others to start going forward in a non-coordinated, unrestrained fashion. Avoiding that is one of the key characteristics of bankruptcy, and I think it's appropriate to protect that process here today." *Tr.* P 12, L11-20.

While this Court is able to review the transcript, the question for this Court is whether this transcript and the Bankruptcy Court's analysis comport with its requirements that it provide a meaningful mechanism for appellate review. The Bankruptcy Court applied what it believed to be the relevant *Sonnax* factors in determining that stay relief was not warranted despite the fact that there is only *one* moving party before it. This case does not involve mass tort claims where allowing an injured party to proceed to recover against the Debtors' insurance would somehow doom the Debtors' ability to reorganize. Of course, this Court would not be able to understand that because of the lack of analysis engaged in by the Bankruptcy Court. The Bankruptcy Court did not consider any admissible evidence in making a "finding" that the Debtors' reorganization efforts would be hampered because the Debtors' counsel argued that the Debtors faced numerous plaintiffs with numerous claims for injuries. That was just the Bankruptcy Court adopting the Debtors' arguments which fails to meet its requirements.

II. THE BANKRUPTCY COURT'S FOCUS ON THE SELF-INSURED RETENTION OBLIGATIONS WAS NOT DISPOSITIVE OF THE ISSUE TO LIFT THE STAY TO ALLOW HENDRICKS TO CONTINUE HER PERSONAL INJURY ACTION.

In *Admiral Insurance v. Grace Industries,* 409 B.R. 275, 282 (E.D.N.Y, 2009) the Court considered the debtor's self-insured retention obligations in the context of a bankruptcy proceeding. The Court rules that an insurer's liability persists even when the insured (the debtor) cannot exhaust the self-insured retention obligations due to the bankruptcy. In so reasoning, the

Court considered New York Insurance Law Section 3420. The Insurance Law provides that "[B]ankruptcy does not relieve the insurance company of its obligations to pay damages for injuries or losses covered under an existing policy."

Similarly, the bankruptcy court in *Diocese of Camden, New Jersey,* 653 B.R. 309, 351 (Bankr. D.N.J. 2023) concluded that "there is caselaw finding that payment of the SIR's are not prerequisites to the Insurers obligation to pay, and instead merely set a floor on the claim amounts below which the insurers have not agreed to make any payments." However, in this case, the Bankruptcy Court simply precluded Hendricks from even seeking recovery solely against the Debtors' insurance policy holding that the SIR provided a basis to deny stay relief. In essence, the Bankruptcy Court made the Debtors' maintenance of *any* insurance policy pointless because under its reasoning the mere fact that the Debtors were responsible for the SIR precluded any and all claims against the insurance that the Debtors, as debtors-in-possession, are required to maintain.

In *Vanderveer Estates Holding,* 328 B.R. 18, 24 (Bankr. E.D.N.Y. 2005), *aff'd sub nom. American Safety Indemnity v. Official Committee of Unsecured Creditors,* No. 05-cv-5877-arr, 2006 WL 2850612 (E.D.N.Y. Oct. 3, 2006) (applying Illinois law), the court underscored the Illinois public policy which prioritized compensation for injured parties, irrespective of the debtor's ability to pay the SIR. The bankruptcy court held, "[T]he plain language of section 388 (under Illinois Insurance Code), makes clear the legislative intent to prevent insurers from using the insured's bankruptcy condition and resulting inability to make actual payment to satisfy a judgment or any portion thereof as grounds to avoid payment on a policy…the operative effect of the language of the self-insured provision is 'directly contrary to the public policy as declared by the legislative enactment of section 388 (of the Illinois Insurance Code).") (*Home Insurance of Illinois v. Hooper,* 294 Ill. App.3d 626, 632, 691 N.E.2d 65, 70 (1998)).

In essence, in this case, the Bankruptcy Court allowed the Debtors to use the stay as both a sword and a shield. The Bankruptcy Court effectively precluded Hendricks from reaching *any* portion of the Debtors' insurance based upon a theory that the costs to the Debtors would be too much. However, based upon the relevant case law, the Debtors' insurer would simply have a claim against the estate, (or Hendricks would have a general unsecured claim against the estate) for any SIR. Even in jurisdictions that do not have a prevailing statute governing the insurer's liability, courts still find that public policy concerns dictate that a bankruptcy filing does not relieve the *insurer* of its liability even if a debtor cannot satisfy the SIR obligations – thus defeating the Bankruptcy Court's reasoning in its denial of stay relief. *See, e.g., Sturgill v. Beach at Mason Limited Partnership,* 2015 WL 6163787, at *2 (S.D. Ohio Oct. 20, 2015) (holding that even in the absence of an Ohio statute requiring the inclusion of bankruptcy clauses, an insurance policy that contains a bankruptcy provision still requires insurer to satisfy the amounts *above* the SIR) (emphasis added).

### III.  THE BANKRUPTCY COURT FAILED TO CONSIDER THAT THE SIR WOULD BE NOTHING MORE THAN A GENERAL UNSECURED CLAIM AGAINST THE BANKRUPTCY ESTATE.

The Bankruptcy Court simply failed to take into account that *if* Hendricks prevailed on her claim for a personal injury, any SIR would simply be a general unsecured claim against the bankruptcy estate. Courts routinely find that a debtor has satisfied its SIR obligations if a proposed chapter 11 plan treats the SIR obligations consistent with the underlying policy and allows claimants an unsecured claim for the SIR portion of the recovery. Any SIR amount could be "satisfied" by a partial distribution under the plan and a discharge of the remaining amount of the claim under the confirmation order. *See, e.g., Pak-Mor Manufacturing v. Royal Surplus Lines Insurance,* 2005 WL 3487723 (W.D. Tex. Nov. 3, 2005).

In *Keck, Mahin & Cate,* 241 B.R. 583 (Bankr. N.D. Ill. 1999) the chapter 11 plan addressed the SIR in that manner. The debtor's insurance policy obligated the debtor to a SIR obligation of $1 million. *Id.* at 595-96. The insurer argued that the plan would allow the debtor to avoid its SIR obligations. The court held that the debtor's SIR obligations were satisfied by the debtor's allowance of an unsecured claim for the SIR and the claimants acceptance of the plan. "The SIRs are to be satisfied in exactly the same way every other unsecured claim against the debtor." *Id.*

IV.   IN DENYING STAY RELIEF, THE BANKRUPTCY COURT GAVE THE DEBTOR GREATER RIGHTS THAN IT HAD UNDER THE INSURANCE POLICY.

By granting stay relief, the Bankruptcy Court would not have caused any direct harm to the Debtors' reorganization and would have protected the rights of the injured Hendricks. Those courts that have allowed an injured party to proceeding against the insurance policy despite a debtor's insured's SIR amount not being otherwise exhausted have set forth that the insurance company is *not* required to pay out the self-insured retention amount in any settlement or judgment entered with or for the benefit of the injured party. Instead, the courts have held that insurer is liable solely for all damages *over* and beyond the SIR amount and providing that the SIR amount is nothing more than a general unsecured claim against the debtor's estate. Assuming that is the state of the law, the Debtors here have no exposure and nothing to complain about. However, the crux of the argument made by the Debtors and relied upon by the Bankruptcy Court, was the immediate damage to the bankruptcy estate – not only in this case but in any hypothetical stay relief motion the Debtors were likely to face.

In *Kleban v. National Union Fire Insurance of Pittsburgh, Pa.,* 771 A.2d 39 (Pa. Super. Ct. 2001), the Court reasoned that to the extent any award granted to the injured party that would be the responsibility of the debtor under the SIR would be nothing more than a general unsecured

claim against the debtor's bankruptcy estate. Similarly, the bankruptcy court in *The Bureau of Oceans and International Environmental and Scientific Affairs,* 319 B.R. 266, 269 (Bankr. M.D. Fla. 2004) vacated the stay to allow the injured party to proceed with a claim against the insurer but the insurer's liability was only as to amounts over and above the SIR amount and that the injured party would be limited to filing an unsecured claim against the debtor for amounts up and until the SIR was exhausted.

## **CONCLUSION**

The Bankruptcy Court erred when it denied relief from the stay to allow Hendricks to return to State Court to prosecute her claim for damages because the Debtors' insurance policy provides for a SIR. This erroneous conclusion foisted extreme prejudice on the injured party and did not act to protect the bankruptcy estate despite the Debtors' misplaced arguments. As the courts have reasoned, any claim for the SIR is a general unsecured claim against the Debtors' estate and does not provide a basis to deny relief from the stay. Whether this Court relies upon the statutory authority under New York Insurance Law or whether the Court looks to the public policy concerns, the stay should be lifted to allow Hendricks to prosecute her claim and look only to the insurance policy to recover amounts over and above the SIR. The Bankruptcy Court's focus on the costs to the estate simply ignored the balance between the harm to Hendricks and the non-existent harm to the creditors of the estate. Even assuming that the SIR in this case was in the maximum amount of $100,000, that SIR would be nothing more than a general unsecured claim against the estate with little to no impact upon the estate and its creditors. For these reasons, the Court should overrule the Bankruptcy Court and grant stay relief to allow Hendricks to pursue her State Court rights solely against the insurance proceeds.